O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RAYMOND GERALD VILLEGAS** | 5:09-cv-00644-DEW |
| **VERSUS** | **JUDGE DONALD E. WALTER** |
| **CITY OF COLTON, ET AL.** | |

## MEMORANDUM RULING

Before this Court is a Motion for Summary Judgment [Doc. #41] filed on behalf of Defendants pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has not filed an opposition to this motion. For the reasons assigned below, Defendants' motion for summary judgment is **GRANTED**.

## STATEMENT OF FACTS

On November 18, 2006, Plaintiff, Raymond Gerald Villegas ("Villegas"), spent the evening with friends drinking at La Villa restaurant in Colton, California. When Villegas and his friends left La Villa at approximately 2 a.m. on November 19 a gang brawl involving twelve or so participants had erupted in the parking lot of La Villa. The brawl was surrounded by many non-participants who were watching, yelling, and instigating the brawlers. La Villa security personnel responded to the situation by using pepper spray on some individuals.

Two Colton Police Department officers, defendants Bermudez and Aloyian, who were near La Villa responded to the situation. Upon seeing the size of the brouhaha, Bermudez requested assistance from other officers. Bermudez and Aloyian attempted to disperse the crowd by ordering them to leave the area.

While Bermudez and Aloyian were attempting to disperse the crowd, Villegas exited the car

driven by his girlfriend and started in the direction of the officers, who were detaining two persons. Bermudez told Villegas to return to his car and leave the area. Villegas, however, refused, informing Bermudez that he was looking for someone named Robert. Again Bermudez requested Villegas return to his car, but Villegas said he was not leaving until he found Robert. Bermudez then grasped Villegas's arm and pushed him back towards his vehicle. At that point other Colton police officers, Bornsheuer and Ramirez, had arrived at La Villa and, along with Aloyian, assisted Bermudez in directing Villegas back to his car. Villegas's friends even pleaded with Villegas to return to the vehicle, but Villegas continued to refuse. Bermudez informed Villegas that if he did not leave the parking lot he would be tased. Villegas then moved towards Bermudez at which point Aloyian put Villegas in a carotid restraint hold and took him to the ground.

Once Aloyian took Villegas to the ground Villegas allegedly resisted Aloyian's actions by reaching for Aloyian's arm and allegedly kicking and hitting. Bornsheuer attempted to grab Villegas's arms but failed. Jaeger then tased Villegas in drive-stun mode. Nonetheless, Villegas continued to struggle with Aloyian. At that point Bermudez said he would shoot Villegas with the taser so the officers managed to turn Villegas on his side. Bermudez then shot his taser at Villegas, striking him in the upper left chest and administering an electric shock from approximately four to six seconds. After the second application of the taser Bornsheuer was able to place a handcuff on Villegas's left hand. Aloyian then stated that Villegas had something in his hand. Fearing a weapon, Bermudez tased Villegas for approximately four more seconds. After this third tasing Bornsheuer was able to cuff both of Villegas's hands.

Due to the struggle to restrain Villegas and the use of a taser, Villegas lost consciousness, and his face appeared blue. Although he regained consciousness before a defibrillator was used,

2

Villegas was taken to the hospital for examination. Aloyian was also transported to a hospital for treatment on his neck and back and for abrasions on his elbows and knees all resulting from his struggle with Villegas.

On December 12, 2006, Villegas was charged with four counts of resisting arrest and one count of battery against a police officer. On July 8, 2008, a jury found him guilty of two counts of resisting arrest and acquitted him of the other three charges. Villegas has not appealed this conviction. Villegas initially brought this suit in California state court in December of 2008, but it was subsequently removed to federal court.

## SUMMARY JUDGMENT STANDARD

Rule 56(c)(2) of the Federal Rules of Civil Procedure provides that summary judgment on a claim "should be rendered if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). A dispute on a material fact is genuine when sufficient evidence is presented from which a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of "pointing out" the absence of a genuine issue of material fact falls upon the moving party. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986). "The fact that no opposition is filed does not excuse the moving party from meeting its burden for summary judgment." *Atlantic Mut. Ins. Co. V. Yasutomi Warehousing and Distrib., Inc.*, 326 F.Supp.2d 1123, 1126 (C.D.Cal. 2004). If the moving party

meets this burden then the non-moving party must go beyond the pleading and identify facts which show a genuine issue for trial. *Id.* at 324. A scintilla of evidence, or evidence that is not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge*, 865 F.2d 1539, 1542 (9th Cir. 1989). "[W]hen no opposition to a motion for summary judgment is filed and when the moving papers themselves are sufficient to show that no genuine issue of fact exists, the Court may grant summary judgment." *Davies v. Valdes*, 462 F.Supp.2d 1084, 1087 n.4 (C.D.Cal. 2006).

## DISCUSSION

### First Claim for Relief – § 1983 Unreasonable and Unnecessary Use of Physical Force

In his first claim for relief Villegas asserts that the defendant officers "used unreasonable and unnecessary forced [sic] to execute his arrest." Defendants argue that this claim should be dismissed for three reasons: 1) it is barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994); 2) their actions were objectively reasonable; and 3) they are entitled to qualified immunity. Although this Court does not reach a conclusion on whether the defendants' actions were reasonable, defendants are entitled to summary judgment under the *Heck* doctrine and qualified immunity.

In *Heck*, the Supreme Court addressed whether § 1983 plaintiffs who had been convicted of a crime could still raise a §1983 claim.

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Id.* at 486-87. The key is "whether a judgment in favor of the [§ 1983] plaintiff must necessarily

4

imply the invalidity of his conviction or sentence; if it does then the § 1983 complaint must be dismissed." *Id.*

On July 8, 2008, a jury in San Bernardino Superior Court convicted Villegas of two counts of resisting a peace officer in the discharge of their duties in violation of California Penal Code § 148. "Under California law, an essential element to establish the prima facie violation of P.C. § 148... is that the assault or obstruction of the peace officer (or other named official) must occur while the officer is engaged in the performance of his duties." *Franklin v. County of Riverside*, 971 F.Supp. 1332, 1335 (C.D.Cal. 1997). "[A] peace officer is not engaged in the performance of his duties, within the meaning of [§ 148], if he arrests a person unlawfully or uses excessive force in making the arrest." *Id.* at 1336. Consequently, a person cannot be convicted of §1948 if the arresting officer used excessive force. *Id.* ("if a police officer uses excessive force to make an arrest, that arrest is unlawful and the arrestee cannot be convicted of violating... P.C. § 148.").

A judgment for Villegas in this case would imply the invalidity of his §148 conviction for resisting arrest because a finding of excessive force in the §1983 context goes against the jury's determination that Villegas resisted arrest, which requires an arrest that did not include the use of excessive force. For that reason, Villegas's claim is barred by the *Heck* doctrine; his first claim for relief must be dismissed with prejudice.

Even if the excessive force claim was not barred by *Heck*, Defendants would be entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S.Ct. 808, 81 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). There are two

5

elements to an inquiry of whether an officer is entitled to the protections of qualified immunity: 1) whether a violation of a constitutional right has been alleged or shown and 2) whether the right at issue was clearly established at the time of the alleged misconduct.[1] *Id.* A right is clearly established when, at the time of the alleged incident, the contours of the constitutional right were so clear a reasonable officer would understand that his actions violate that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In other words, "in the light of pre-existing law the unlawfulness must be apparent." *Id.* Qualified immunity, therefore, protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In *Marquez v. City of Phoenix*, 2010 WL 3342000 (D.Ariz. Aug. 25, 2010), the court examined the state of the law regarding taser applications in determining whether a police officer who used a taser in late July, 2007 was liable for a § 1983 excessive force claim. The court in *Marquez* pointed out that it was not until *Bryan v. McPherson*, 590 F.3d 767, in 2009 that the Ninth Circuit announced what level of force use of a taser in dart mode constitituted.[2] Therefore, the officers were entitled to qualified immunity because "[A]bsent a clear statement of law, the officers

---

[1] While *Saucier v. Katz*, 533 U.S. 194 (2001) required district courts to apply the two-prong test for qualified immunity in that order, the Court has since loosened that requirement. In *Pearson*, the Court overturned the strictness of the *Saucier* rule: "On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* Under the authority of *Pearson*, this Court bypasses the first prong of the *Saucier* test as the second alone suffices to determine this case.

[2] The defendants here used a taser in both dart and stun modes. The Ninth Circuit recently announced that use of a taser in drive-stun mode is less than intermediate force. *Brooks v. City of Seattle*, 599 F.3d 1018 (9th Cir. 2010). Because the standard for stun mode taser use is more recent than that for dart mode, the analysis in *Marquez* of whether the law concerning the use of tasers was clearly established in July 2007 is applicable to all forms of taser use.

6

could have made a reasonable mistake of law regarding the constitutionality of the use of the taser in the circumstances they confronted in 2007." *Marquez* at *16.[3]

The alleged tortious actions in the case at hand occurred in November 2006, half a year before the events in *Marquez*. As *Marquez* makes clear, the law regarding the use of tasers was not clearly established in July 2007. As such, it could not have been clearly established in November 2006. Defendants, then, are entitled to qualified immunity from Villegas's claim for unreasonable and unnecessary use of physical force. Villegas's first claim for relief is dismissed with prejudice.

Second Claim for Relief – § 1983 Monell

Villegas's second ground for relief is a § 1983 claim against the City of Colton for policies that inflict constitutional torts. Municipalities are not liable for the constitutional torts of their employees under the doctrine of *respondeat superior*. *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658 (1978). A city is only liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694. To succeed on a *Monell* claim a plaintiff must show an "action pursuant to official municipal policy of some nature caused a constitutional violation." *Berry v. Baca*, 379 F.3d 764, 767 (9th Cir. 2004) (internal citations omitted). For a claim

---

[3] *Marquez* also distinguished *Oliver v. Fiorino*, 586 F.3d 898 (11th Cir. 2009). The court in *Oliver* found that even if the law was not clearly established for the facts at the time of the incident, certain conduct by police officers is so obviously to the heart of fourth amendment prohibitions that an officer should know not to engage in them. The court then found that the repeated tasering of a mentally ill man—almost ten times over a short period of time without attempting to arrest him—constituted excessive force even though no court had clearly stated as much prior to the officer's actions. Distinguishing its case at hand the court in *Marquez* stated that "[t]his is not one of those cases in which the officer's conduct was so plainly unnecessary and disproportionate that no reasonable officer could have thought that the force used was legal." *Marquez* at *16. The same is true here. None of the defendants' conduct was so unreasonable, as evidenced by Villegas's conviction for resisting arrest, that the rule in *Oliver* should apply.

of deliberate inaction by a municipality, which Villegas makes, a plaintiff must establish: "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy [was] the 'moving force behind the constitutional violation.'" *Id.* (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)).

Villegas filed no opposition to Defendants' motion for summary judgment, and as such he has failed to produce sufficient evidence to support his *Monell* claim. Other than the bald assertions of his Second Amended Complaint, Villegas has offered no proof of the existence of a policy by the City of Colton, no evidence that the policy amounts to deliberate indifference to his constitutional rights, and no support that the policy was a moving force behind a constitutional violation. Absent such proof Defendants' motion for summary judgment must be granted. Villegas's second claim for relief is dismissed with prejudice.

Sixth Claim for Relief – Assault and Battery

The sixth claim for relief in Villegas's Second Amended Complaint asserts claims for assault and battery, presumably under state law. Like Villegas's § 1983 claims for excessive force, his assault and battery claims are barred by the *Heck* doctrine. *See Susag v. City of Lake Forest*, 94 Cal.App.4th 1401, 1413, 115 Cal.Rptr.2d 269 (2002) (concluding that a defendant's state battery claim was "precluded by his standing conviction [under Penal Code § 148] for resisting or obstructing a peace officer."); *Yount v. City of Sacramento*, 43 Cal.4th 885, 902, 183 P.3d 471 (2008) ("In light of the fact that *Heck* and California law express similar concerns about judicial economy and the avoidance of conflicting resolutions, we conclude that the analysis [of a § 1983

claim under *Heck*] applies equally to Yount's common law claim for battery.").[4] Villegas's assault and battery claims arise "from the same alleged misconduct" as his § 1983 excessive force claim. *Susag*, 43 Cal.App.4th at 1412. Therefore, like the § 1983 claim, the assault and battery claims are barred by *Heck*. Villegas's sixth claim for relief is dismissed with prejudice.

## CONCLUSION

For the reasons assigned above, Defendants' motion for summary judgment is **GRANTED**. Plaintiff's first, second, and sixth claims for relief are **DISMISSED WITH PREJUDICE**.

THUS DONE AND SIGNED, in Shreveport, Louisiana, this 9th day of December, 2010.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

---

[4] While these cases only mention the application of *Heck* to battery claims (and this Court found no California case that applies *Heck* to an assault claim), the policy justifications for applying *Heck* to state-law claims justifies its application to Villegas's assault claim.